NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 29, 2018[*]
Decided July 2, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

MICHAEL S. KANNE, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 18-1622

| | |
|---|---|
| CHINYERE U. NWOKE<br>*Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Northern District of<br>Illinois, Eastern Division. |
| *v.* | No. 117 C 00140 |
| CONSULATE OF NIGERIA,<br>*Defendant-Appellee*. | Edmond E. Chang,<br>*Judge*. |

**O R D E R**

Chinyere Nwoke sued the Consulate of Nigeria for breach of contract after it allegedly failed to provide her and her son with passports for which she says she paid. The district court dismissed Nwoke's claims for lack of jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602–1611. Because Nigeria's immunity under this Act deprived the court of subject-matter jurisdiction, we affirm the judgment.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. See FED. R. APP. P. 34(a)(2)(C).

This suit was short-lived in the district court. In her complaint, Nwoke alleged that in 2016 she paid nearly $500 to the Nigerian Consulate for passports for her and her son. They provided fingerprints, photographs, and envelopes for the passports. When Nwoke did not receive the passports, she sued the consulate for breach of contract. The district court dismissed the suit for two reasons. First, Nwoke failed to effectuate proper service under 28 U.S.C. § 1608(a). Second, Nigeria is "immune from the jurisdiction of the courts of the United States," *id.* § 1604, and no exception to that immunity under § 1605 applies.

Because there is no required "sequencing" among different non-merits grounds for dismissal, we turn first to subject-matter jurisdiction. See *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584–85 (1999). This suit against the Consulate is an action against a "foreign state." See 28 U.S.C. § 1603. Federal courts have subject-matter jurisdiction over claims against a foreign state only if the foreign state "is not entitled to immunity" under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605–1607, or an international agreement. 28 U.S.C. § 1330(a). See *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). The Act, in turn, dictates that "a foreign state shall be immune from the jurisdiction of the courts of the United States" except as provided in the Act itself or by international agreement. 28 U.S.C. § 1604. Nwoke points to no international agreement, so the Consulate is immune unless an exception within the Act applies. On appeal Nwoke develops arguments that two exceptions apply, but neither does.

Nwoke first invokes the exception for acts "based upon a commercial activity" in 28 U.S.C. § 1605(a)(2), but that exception does not apply to the issuance of passports. A foreign state is immune from federal jurisdiction for its "sovereign or public acts," but not its acts that are "private or commercial in character." *Saudi Arabia*, 507 U.S. at 360. Nwoke argues that the Consulate's actions were commercial because it "was making a profit from a fraudulent activity." But we do not consider a foreign state's profit "motivation" in determining whether its activity is sovereign or commercial. *Id.;* see 28 U.S.C. § 1603(d). Instead, we look only to whether a private person could have engaged in similar conduct. *Saudi Arabia*, 507 U.S. at 360. Private parties cannot issue national passports, so the Consulate was engaged in sovereign activity.

Second, Nwoke invokes the exception for a foreign state's "tortious acts" in 28 U.S.C. § 1605(a)(5), but that exception does not apply to contract claims. A foreign state may be sued under this exception for personal injury, wrongful death, or property damage occurring in the United States "caused by the tortious act or omission of that

foreign state." *Id.* But the Act excludes from "tortious acts" conduct based on "interference with contract rights." *Id*. § 1605(a)(5)(B); see also *Tort*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "tort" as "[a] civil wrong, *other than breach of contract*, for which a remedy may be obtained (emphasis added)). Nwoke's suit falls within this exclusion because she accuses the Consulate only of breach of contract. So § 1605(a)(5)(B) shields the Consulate from the jurisdiction of federal courts.

This exception does not apply for another reason. The Act preserves immunity for "tortious acts" based on "discretionary functions," *id.* § 1605(a)(5)(A). Nwoke has not met her burden to show that immunity does not apply here. See *Alberti v. Empresa Nicaraguense De La Carne*, 705 F.2d 250, 256 (7th Cir. 1983). To decide whether conduct is discretionary under the Act, courts use the same principles as used under the Federal Tort Claims Act, 28 U.S.C. 2680(a). See *Risk v. Halvorsen*, 936 F.2d 393, 395 (9th Cir. 1991). An act is discretionary if it involves "an element of judgment or choice" and the decision involves "considerations of public policy." *Lipsey v. United States*, 879 F.3d 249, 254 (7th Cir. 2018). Nwoke makes no assertion that Nigeria's issuance of passports is mandatory or free from policy considerations, so the Consulate's immunity is preserved for this reason as well.

We have considered Nwoke's other arguments, and none has merit. The judgment of the district court is AFFIRMED.